UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
RELIANT TRANSPORTATION, INC., :
:
Plaintiff, :
: **Case No.: _____**
- against - :
:
AMALGAMATED TRANSIT UNION, :
LOCAL 1181-1061, AFL-CIO :
:
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## **COMPLAINT FOR DECLARATORY JUDGMENT AND STAY OF ARBITRATION**

Plaintiff Reliant Transportation, Inc. ("Plaintiff," "Reliant," or "Company") files this Complaint against the Amalgamated Transit Union, Local 1181-1061, AFL-CIO ("Defendant," "ATU," or "Union") and alleges as follows:

## **NATURE OF THIS ACTION**

1. As set forth in more detail below, this matter arises out of the Union's attempt to submit two disputes to arbitration despite the fact that Reliant has no current obligation to arbitrate such disputes because the underlying collective bargaining agreements have expired and despite the fact that the Company's alleged obligations are still the subject of ongoing collective bargaining negotiations. Moreover, the Union has requested, and the arbitrators have agreed, over Reliant's objection, to proceed to "virtual" arbitration hearings despite the fact that the parties never contemplated and never agreed, under a collective bargaining agreement or otherwise, to a remote or virtual hearing process. Finally, the Union has requested, and the arbitrators have

agreed, again over Reliant's objection, to hold arbitration hearings on June 10 and June 12, 2020, despite the fact that New York City, where Reliant is headquartered, remains subject to Governor Cuomo's New York PAUSE Executive Order through June 27, 2020.[1] Under the PAUSE Order, Reliant and its employees cannot lawfully obtain access to documents and evidence in its New York offices which may be needed for its defense. Reliant should not be forced to make the choice to either violate the PAUSE Order or to sacrifice its ability to present a full and fair defense (even assuming there was a binding agreement to arbitrate the disputes at issue, which there is not). At the absolute minimum, the arbitrations should be stayed while the Court determines whether or not the underlying disputes are subject to arbitration. For these and the other reasons set forth below, Reliant is seeking a declaration that the disputes at issue are not subject to arbitration and/or that the arbitration hearings must be stayed until such time as these matters may be ripe for arbitration, if ever, and a fair hearing process can be conducted.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §2201, *et. seq*, and 29 U.S.C. §185(a).

3. This Court has personal jurisdiction over Defendant under 29 U.S.C. §185(c)(2) because Defendant's duly authorized officers and/or agents are engaged in representing or acting for employee members in this judicial district. The territorial jurisdiction of the ATU (and the underlying Memoranda of Agreement ("MOAs")) extends to this judicial district. Thus, a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

---

[1] *See* New York Governor's Executive Order No. 202.34, May 28, 2020, available at https://www.governor.ny.gov/news/no-20234-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (accessed June 4, 2020).

4. Venue is appropriate in this Court under 29 U.S.C. §185(a) because this action seeks a declaration relating to the parties' rights related to a labor contract, which action may be brought in any district court in the United States having jurisdiction over the parties. Venue also is appropriate in this Court because Defendant resides in this judicial district within the meaning of 28 U.S.C. §§1391(b)(1) and (c)(2), and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district within the meaning of 28 U.S.C. §1391(b)(2).

## PARTIES

5. Plaintiff Reliant is a for-profit transportation company incorporated in Delaware, and has conducted business in the City of New York by providing school bus transportation services under various agreements with the New York City Department of Education ("DOE"). Reliant is a student-transportation subsidiary of MV Transportation, Inc., which is a for-profit transportation company incorporated in California.

6. Defendant ATU is a labor organization within the meaning of 29 U.S.C. §152(5) and 29 U.S.C. §185(a).

## FACTUAL ALLEGATIONS

**A. BACKGROUND**

7. In August 2011 in an asset purchase transaction, Reliant assumed from USA United Fleet Inc. an existing bus fleet and four DOE operation and maintenance contracts.

8. As a result, Reliant became party to multiple contracts with the New York City Department of Education to provide school bus transportation services in the City of New York.

9. As part of its requirements, DOE effectively required Reliant to become a party to a collective bargaining agreement with the Union as a condition of doing business with DOE. This

collective bargaining agreement covers the drivers and attendants Reliant employs as part of provision of school bus transportation services in the City of New York.

10. In August 2011, Reliant assumed the 2009-2012 collective bargaining agreement to which USA United Fleet Inc. previously was a party with the Union. Since that time, Reliant has negotiated a series of one year MOAs with the Union, including the 2017-18 MOA which expired on June 30, 2018, and the 2018-19 MOA which expired on June 30, 2019.

11. Despite engaging in protracted negotiations since July 2019 for a new MOA covering the 2019-2020 school year, the parties have not yet reached a new collective bargaining agreement.

**B. THE STEP INCREASE DISPUTE IS NOT SUBJECT TO ARBITRATION**

12. The first dispute at issue is a dispute regarding the payment of "step increases" to the wages of certain employees (the "Step Increase Dispute"). Based on Reliant's understanding of the Union's claim, this claim is based on the 2017-18 MOA, which was executed by the parties in October 2017 and covered the period from July 1, 2017 to June 30, 2018. (*See* 2017-18 MOA, attached as <u>Exhibit 1</u>, at § 1.) Notwithstanding the expiration of any underlying CBA, the Union has demanded arbitration of the Step Increase Dispute and the assigned arbitrator has set a hearing for June 12, 2020.

13. The 2017-18 MOA included language which states in relevant part that "New Employees and New Hires will become eligible to receive step increases beginning in July 2019, **subject to the parties' agreement on a wage and step increase grid for such employees.**" (*See id.*, at § 3 (second bullet point) emphasis added.) The 2017-18 MOA also included wage charts for "new" drivers and attendants, which included the following language: "Step Increases will begin in July 2019, **subject to negotiation and agreement between the parties**." (*Id.*, at § 3 (second bullet point) and attached "Reliant New Hire Drivers Wage Increase" Chart (emphasis added).)

14. The facts and circumstances at issue in the Step Increase Dispute did not arise until after July 2019, long after the expiration of the 2017-18 MOA. In addition, no alleged right to step increases was vested under or survived the expiration of that MOA because any alleged right was expressly conditioned upon subsequent negotiation and agreement between the parties. *See Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 199, 205-06 (1991) ("A post-expiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.")

15. Further, the alleged right to step increases for New Employees in the 2017-18 MOA was superseded by the now expired 2018-19 MOA. The 2018-19 MOA has a number of detailed provisions regarding wage increases for the various categories of employees and specifies the amounts and timing of those increases. (*See* 2018-19 MOA, attached as <u>Exhibit 2,</u> at § 2.) Significantly, the only wage chart attached to the 2018-19 MOA is a wage chart for new drivers, which specifies the exact increases that those drivers will receive and does not provide for any other step increases. No other language in the 2018-19 MOA states that other step increases will apply thereafter. In other words, by seeking to arbitrate the Step Increase Dispute, the Union is attempting to enforce a provision of a contract that expired almost two years ago and was superseded by a subsequent MOA (which is also now expired) that is contrary to the Union's position.

16. The Company is not obligated to arbitrate the Step Increase Dispute because arbitration is purely a matter of contract and the obligation to arbitrate expired when the underlying

5

MOA expired. *See Valley Hosp. Med. Ctr., Inc.*, 368 NLRB No. 139 (Dec. 16, 2019) (noting that the National Labor Relations Board ("Board") has "always recognized…the cessation of certain contractual obligations upon contract expiration[,]" including arbitration); *see also Litton*, 501 U.S. at 199, 200-01 ("We reaffirm today that under the NLRA arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement.").

### C. THE EASTER WEEK DISPUTE IS NOT SUBJECT TO ARBITRATION

17. The second dispute at issue is a dispute regarding the Company's alleged obligations to pay for forty (40) hours of time for an "Easter Adjustment Week" during the 2019-20 school year under the terms of the 2018-19 MOA (the "Easter Week Dispute"). The relevant terms of the 2018-19 MOA state that for employees hired prior to January 1, 2013, the Company "will pay 40 hours for Easter Adjustment Week for the 2019-2020 school year and thereafter, **contingent upon the Company having an agreement with the DOE for school bus transportation services for such school year.**" (Ex. 2 at § 4 (emphasis added).) The Union has demanded arbitration of the Easter Week Dispute and the arbitrator has set a hearing for June 10, 2020.

18. The 2018-19 MOA, however, expired on June 30, 2019, well before the Easter Week Dispute arose, and no new agreement has since been signed. (*Id.*, at § 1.)

19. In addition, no right to payment of Easter Week was vested under the 2018-19 MOA because any alleged right was subject to subsequent bargaining and was expressly contingent upon the Company having an agreement with the DOE for the 2019-2020 school year.

20. The Company and the DOE never entered into an agreement for school bus transportation services for the 2019-2020 school year and school bus transportation services were terminated by the DOE in March 2020 as a result of the COVID-19 pandemic.

21. Thus, the Company is not obligated to arbitrate the Easter Week Dispute because arbitration is purely a matter of contract and the obligation to arbitrate expired when the underlying CBA expired. *See Valley Hosp.*, 368 NLRB No. 139 (Dec. 16, 2019) (noting that the Board has "always recognized…the cessation of certain contractual obligations upon contract expiration[,]" including arbitration); *see also Litton*, 501 U.S. at 199, 200-01 ("We reaffirm today that under the NLRA arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement.").

22. The alleged Easter Week obligation in the 2018-19 MOA is also subject to an explicit contingency that has not occurred – that the Company have a contract with the DOE for the 2019-20 school year. Since the DOE never entered into such an agreement with the Company, that contingency was never satisfied, and no alleged right to Easter Week ever vested under the expired MOA.

23. Further, the Easter Adjustment Week provision is subject to subsequent collective bargaining, and the obligations of the parties regarding the 2019-20 school year have not yet been fixed because the parties are still in negotiations. Thus, any arbitration of such issues would be premature at this time.

    **D. RELIANT NEVER AGREED TO VIRTUAL ARBITRATION AND SHOULD NOT BE FORCED TO ARBITRATE WHEN DOCUMENTS AND EVIDENCE ARE NOT ACCESSIBLE WITHOUT VIOLATING NEW YORK'S PAUSE ORDER**

24. At the Union's request and over Reliant's objections, the arbitrators assigned to the Step Increase Dispute and the Easter Week Dispute have scheduled arbitration hearings for June 10, 2020 (the Easter Adjustment Week arbitration) and June 12, 2020 (the Step Increase arbitration). In each case, and again over Reliant's objections, the arbitrators scheduled "Zoom hearings" to be conducted via video and teleconference.

25.     Under the CBA and the subsequent MOAs, Reliant never contemplated circumstances such as those created by the COVID-19 pandemic. Neither, upon information and belief, did the Union.  Reliant and the Union never discussed or contemplated the possibility of "virtual" arbitration hearings, and there was never any meeting of the minds or contractual agreement to such arbitration processes. Since arbitration is purely a creature of contract, Reliant is not obligated to engage in virtual arbitrations because such arbitration processes are outside the scope of any alleged arbitration agreement between the Company and the Union.

26.     New York City, where Reliant is headquartered, and where some of the witnesses and documents for the arbitration hearings are located, remain subject to Governor Cuomo's PAUSE Order, which requires Reliant employees to stay at home through June 27, 2020 due to the COVID-19 pandemic.  (*See* New York Governor's Executive Order EO No. 202.34, May 28, 2020, available at https://www.governor.ny.gov/news/no-20234-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (accessed June 4, 2020)).  Reliant cannot review the documents and evidence located at its New York offices without violating the terms of the PAUSE Order, and it cannot fully assess the impact of such evidence on its defense without the ability to review these materials.

27.     In addition to being contrary to Board law and Supreme Court precedent, holding the arbitrations now would severely prejudice the Company by forcing it to arbitrate in a manner it never agreed to (and does not want to, in light of the inherent problems with virtual arbitrations), denying it the opportunity to adequately prepare for the hearings, which are scheduled to take place during a pandemic, among other incidents of societal upheaval, in a location that was the hardest hit in the country by the pandemic, and is currently under the strictest of the remaining closure orders.

## COUNT I: DECLARATION OF RIGHTS UNDER EXPIRED MOAs

28. The allegations contained in Paragraphs 1 through 27 above are incorporated herein by reference, as if fully restated and set forth herein.

29. Both the 2017-18 MOA and 2018-19 MOA have expired. (*See* Ex. 1 at § 1 and Ex. 2 at § 1.) The Step Increase Dispute and the Easter Week Dispute are therefore not subject to arbitration.

30. The issue of whether there is an obligation to arbitrate is for the court to decide and not the arbitrator. *Litton*, 501 U.S. at 208-09 ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to "'arbitrate the arbitrability question.'") (citing *AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 651 (1986)); *see also id*. at 200-01 (company not required to arbitrate disputes occurring after expiration of collective bargaining agreement where agreement did not otherwise provide for continuing obligation to arbitrate; arbitration is matter of consent and will not be imposed beyond scope of parties' agreement); *see also Valley Hosp.*, 368 NLRB No. 139 (Dec. 16, 2019) (the Board has "always recognized…the cessation of certain contractual obligations upon contract expiration[,]" including arbitration).

31. As noted above, the arbitrators have scheduled hearings for June 10, 2020 (the Easter Week Dispute arbitration) and June 12, 2020 (the Step Increase Dispute arbitration). In each case, the arbitrators scheduled "Zoom hearings" to be conducted via video and teleconference.

32. New York City, where Reliant is headquartered, and where many of the witnesses and documents for the arbitration hearings are located, is currently under a "stay at home" order through June 27 due to the COVID-19 pandemic. (*See* New York Governor's Executive Order EO No. 202.34, May 28, 2020, available at https://www.governor.ny.gov/news/no-20234-

continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (accessed June 4, 2020)).

33. As set forth above, Reliant never agreed to virtual arbitration hearings, and it cannot obtain access to certain documents and evidence in New York City unless it violates the terms of the PAUSE Order still in effect. Reliant therefore requests that at a minimum, the Court issue an order staying the pending arbitrations.

34. The matters described herein are a substantial controversy between parties with adverse legal interests. The controversy is of sufficient immediacy and reality to warrant issuance of a declaratory judgment by the Court. Defendant has already commenced the arbitration procedure for both of its claims, with hearings set on June 10, 2020 and June 12, 2020 for the Easter Adjustment Week and Step Increase issues, respectively.

35. The relief sought is not hypothetical or speculative. The threat of harm to Plaintiff is real and immediate and requires emergency intervention by the Court. Accordingly, there is a justiciable controversy between Plaintiff and Defendant relating to their legal rights, and the controversy is ripe for review by this Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays as follows:

(a) That the Court issue a declaration that Plaintiff is not contractually bound by the expired 2017-18 MOA or the expired 2018-19 MOA or otherwise to arbitrate either the Step Increase Dispute or the Easter Week Dispute;

(b) That the Court issue an Order prohibiting the Union from further pursuing arbitration of such disputes;

(c) That in the alternative, the Court immediately issue an Order staying any arbitration of the Step Increase Dispute or the Easter Week Dispute;

(d) That the Court award Plaintiff all costs associated with bringing this action including but not limited to attorneys' fees; and

(e) That the Court grant Plaintiff any other and further relief as is just and proper.

Dated: June 4, 2020

Respectfully Submitted,

HUNTON ANDREWS KURTH LLP

/s/ *Silvia N. Ostrower*
Silvia N. Ostrower
200 Park Avenue, 52nd Floor
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
sostrower@huntonak.com

Kurt A. Powell*
Robert T. Dumbacher*
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, GA 30308
Telephone: (404) 888-4000
Facsimile: (404) 888-4190
kpowell@huntonak.com
rdumbacher@huntonak.com

*Pro hac vice motions forthcoming*
*Counsel for Plaintiff Reliant Transportation, Inc.*